IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARRION LEWIS,
        *Plaintiff,*

v.

MEARL JUSTUS, RICH WATSON, JACK DINGES, OFFICER NICHOLS, OFFICER LEVI BRIDGES and CAMERON REID,
        *Defendants*.

Case Number: 3:14-cv-01301-SMY-PMF

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Currently before the Court are two motions: a Motion for Summary Judgment filed by Defendants Jack Dinges, David Nichols, Levi Bridges and Cameron Reid (Doc. 17); and a Motion for Summary Judgment filed by Defendant Richard Watson (Doc. 18). Plaintiff Darrion Lewis did not file a response in opposition to either motion.

Lewis is a former inmate at the St. Clair County Jail (hereinafter "the jail") and the defendants are all St. Clair County employees. Lewis initiated this suit when he, along with four co-plaintiffs, filed the Complaint in *Pasley, et al., v. Justus, et al.,* Case No. 3:14-cv-00505-SMY-PMF (S.D. Ill) on May 1, 2014 pursuant to 42 U.S.C. § 1983 and assert that the defendants subjected them to unconstitutional conditions of confinement while they were detained at the jail. District Judge Gilbert screened the Complaint pursuant to 28 U.S.C. § 1915A and found that the plaintiffs stated a colorable unconstitutional conditions of confinement claim.[1] *Id.* at Doc. 22. On

---

[1] Judge Gilbert held that the plaintiffs articulated a colorable conditions of confinement claim arising out of the alleged "overcrowding, inadequate food portions, filthy bathrooms, denial of access to cleaning supplies, inadequate access to the law library, exposure to mice and insects, exposure to the foul odor of human feces, peeling paint in the living areas, being forced to sleep on the floor, a lack of recreation, and inadequate medical care."

November 20, 2014, Lewis's claims were severed from the original case and he now proceeds as a single plaintiff in the instant case. *Id.* at Doc. 57. For the following reasons, the defendants' motions for summary judgment are **GRANTED.**

## BACKGROUND

One procedural matter must be noted before detailing the factual background. Plaintiff Darrion Lewis filed suit *pro se* but he was later recruited counsel in this matter (See Docs. 24 – 27). However, Recruited Counsel did not file a response in opposition to the defendants' motions for summary judgment. Pursuant to Local Rule 7.1(c) a "[f]ailure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion." Here, out of an abundance of caution, the Court will not consider Plaintiff's non-response as an admission of the merits. The following is therefore gleaned from Lewis' Complaint and the defendants' motions.

Plaintiff Darrion Lewis was first booked into the St. Clair County Jail on May 23, 2011. (Doc. 17-6, p. 1). He was detained at the jail until he was transferred to the Illinois Department of Corrections (state prison) on October 17, 2012. *Id.* In his Complaint, Lewis alleges that he was subjected to:

> poor living conditions, denial of cleaning material; small amounts of food per serving, denial of outside recreation; denial of adequate access to Law Library, insects and mice in units; overcrowding of inmates, sleeping on floors that are filthy due to denial of cleaning materials and items, filthy sinks, toilets and showers; and paint peeling off of walls [and other areas].

(Doc. 2). His Complaint also alleges that he was exposed to foul odors and that the defendants provided him with inadequate health care. *Id.*

2

Lewis described the jail conditions in greater detail during his deposition. During the entirety of his stay at the jail, he was housed in Annex Block AA. (Doc. 17-1, p. 1). There were upper and lower galleries in the cell block and the cells exited out to a dayroom area. (Doc. 17-1, p. 3). Lewis shared a cell with one other cellmate. *Id.* His cell had a lower and upper bunk. (Doc. 17-1, p. 2). The lower bunk consisted of a cement block and the upper bunk was suspended over the lower bunk. *Id.* Lewis and his cellmate were provided mattresses and blankets. (Doc. 17-1, p. 1). The cell also contained a sink and toilet. (Doc. 17-1, p. 4). The cell toilet functioned properly but the sink failed to operate on occasion. *Id.* Overall, Lewis described the cell as "small" but large enough for him to move around and lay down in. *Id.* He frequently observed bugs spiders, flies and mice at the jail. (Doc. 17-1, p. 6).

In September, 2012 Lewis mentioned the mice problem to a Correctional Officer Collins. *Id.* Additionally, there was a problem with paint peeling off the walls. (Doc. 17-1, p. 10). However the paint problem did not injure the plaintiff. (Doc. 17-1, p. 12). Plaintiff also mentioned that one of the toilets in the day room did not work and that the maintenance workers declined to fix it. (Doc. 17-1, p. 8).

Additionally, Lewis testified that the prison staff provided inadequate cleaning supplies (Doc. 17-1, p. 13). If requested, jail employees would provide brooms, mops and buckets of water, but Lewis noted that he and the other detainees were provided with an inadequate amount of cleaning products. *Id.* As a result, he was forced to buy shampoo at the commissary to use as a cleaning solution. *Id.*

Lack of recreation space was another issue. Lewis testified that the dayroom was too crowded to exercise in. (Doc. 17-5, p. 1). During the entirety of his stay, he was never allowed outside for recreation. *Id.* There was space for limited exercises, such as pushups, in a walkway

next to the lower gallery. *Id.* Further, Lewis stated at his deposition that the food portions at the jail were too small. (Doc. 17-5, p. 25). However he received three meals a day and he was unsure if the food was actually nutritionally inadequate. *Id.*

Lewis also testified that he was provided with inadequate medical care. In one instance, he accidentally cut the side of his knee on a dayroom chair. (Doc. 17-5, p. 17). Lewis submitted a request for sick call and he was seen a week or so later. (Doc. 17-5, p. 18). The nurse performing the examination gave Lewis triple antibiotic ointment and a band aid. *Id.* In another instance, Lewis had a bug bite on his knee. (Doc. 17-5, p. 20). The bug bite swelled to about the size of a quarter. (Doc. 17-5, p. 23). He submitted a request for sick call but was never called down to see the nurse. (Doc. 17-5, p. 21). Lewis applied some of his left over ointment to the bite area and it healed a few weeks later. (Doc. 17-5, p. 23).

Lewis also testified that the law library was full of outdated books, that he was allowed insufficient time there and that law library workers were unhelpful. (Doc. 17-1, p. 9).[2]

Defendants supported their motions for summary judgment with the affidavits of various jail employees. Phillip McLaurin is the superintendent of the jail and he "oversee[s] all St. Clair County Jail operations." (Doc. 17-5, p. 1). McLaurin states in his affidavit that "[c]orrectional officers check cells at a minimum every 30 minutes and a walk through of the entire Jail facilities is conducted during each day and night shift every day." (Doc. 17-5, p. 2). Additionally, each cell block day room has sufficient space for detainees to exercise. (Doc. 17-5, p. 3). Jail policy also provides that "detainees will be permitted at least one hour of weekly recreation and this policy has been followed since its adoption and since its revision in March 1, 2012." (Doc. 17-5, p.2). When weather permits, detainees are allowed outside for recreation. *Id.*

---

[2] Plaintiff acknowledges that he was represented by counsel during his criminal proceedings and the record is unclear as to what kind of legal work he was attempting in the law library.

Sergeant Levi Bridges is a Correctional Officer at the jail and has served as the "sanitary officer" since 2009. (Doc. 17-4, p. 1). Bridges states in an affidavit that "[t]wice every day each block of the Jail is provided with cleaning supplies in the form of multi-gallon bucket including a mixture of deodorizer, disinfectant and cleaner solution, along with a broom, dust pan, mop and trash bags." *Id.* Bridges also states that "once a week each cell is provided with supplies for a detailed cleaning including a multi-gallon bucket of hot water and a cup of bleach additive comet like powder along with scrubbing pads or brushes." (Doc. 17-4, p. 2). Additionally, cell inspections take place every Thursday. *Id.*

Jeff Brown is the jail maintenance supervisor and has held that position since 2004. (Doc. 17-2, p. 1). Brown states in an affidavit that professional pest exterminators visit the jail once a month. (Doc. 17-2, p. 2). The exterminators "visit to inspect and address pest problems, including spraying for pests and insects." *Id*. Brown also states that the showers and toilets are regulated by the "Programmable Water Technologies System by Sloan Valve Company." *Id*. This plumbing system "reduces the chance of flooding and backups." *Id*.

## ANALYSIS

Pretrial detainees and inmates both have a right to not be subjected to unconstitutional conditions of confinement. Although this right stems from different sources (pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment and inmates are protected by the Eighth Amendment), courts generally apply the same conditions of confinement standards interchangeably for both. *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012).

A plaintiff asserting a conditions of confinement claim must establish two elements; (1) the adverse condition must be sufficiently serious and (2) the defendant must be aware of the

condition but consciously disregard it. *Id.* at 655. The Supreme Court observed in *Hudson v. McMillan* that "extreme deprivations are required to make out a conditions-of-confinement claim … [and] only those deprivations denying the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." 503 U.S. 1, 8-9 (1992) (internal cite and quote omitted). Here, the Plaintiff alleges that numerous conditions and circumstances at the St. Clair County jail amounted to unconstitutional conditions of confinement. Each will be addressed in turn.

Plaintiff states in his Complaint that the jail was overcrowded. Overcrowded conditions may be unconstitutional if the overcrowding leads to increased violence or deprivations of medical care, food or sanitation. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). Here, however, the conditions at the jail were not so crowded as to violate plaintiff's constitutional rights. Plaintiff was housed in a two man cell with a sink and toilet. During the day, plaintiff had access to the dayroom. Double celling does not violate the constitution. See *McCree v. Sherrod*, 408 F. App'x 990, 992 (7th Cir. 2011) (triple celling at FCI Greenville was not unconstitutional). Although Lewis takes issue with the medical care, food and sanitation, the causal link between the alleged overcrowding and these issues is nebulous. Further, there is nothing to suggest that these conditions resulted in any increased violence.

Next, Lewis claims that bug and rodent infestation violated his constitutional rights. Under some extreme circumstances, a pest infestation may result in unconstitutional conditions of confinement. In *Antonelli v. Sheahan*, the Seventh Circuit found that a pretrial detainee stated a conditions of confinement claim where the cockroach infestation at the Cook County Jail was so extreme that cockroaches were "everywhere," "crawling on plaintiff's body" and "constantly"

waking him up during sleep. 81 F.3d 1422, 1431 (7th Cir. 1996). Moreover, the jail had only provided two pest control sprayings in a sixteen month period. *Id.*

However, in *Sain v. Wood* the Seventh Circuit held that the plaintiff's conditions did not amount to a constitutional deprivation where during a six year period, the plaintiff often saw several cockroaches in his cell, was twice bitten by cockroaches, but a pest exterminator visited on a monthly basis. 512 F.3d 886, 894 (7th Cir. 2008). Here, Lewis's situation is more analogous to that in *Sain* than *Antonelli*. Although the conditions at the jail do not appear to be ideal, Lewis was never harmed by the bugs or mice (except for the possibility of one bug bite) and the defendants provided evidence that exterminators visit the jail on a monthly basis.

Lewis also complains that he was provided with inadequate cleaning supplies. "[P]rison officials have a responsibility to provide inmates with a minima of shelter, sanitation and utilities—basic necessities of civilized life." *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989). Lewis testified at his deposition that he was provided with a mop and bucket of water when asked, but due to inadequate supplies he was forced to purchase additional cleaning products at the commissary. Again, this may not be ideal but it is not unconstitutional. See, e.g., *Poole v. Isaacs*, 703 F.3d 1024, 1026 (7th Cir. 2012) (requiring prisoners to contribute medical co-pay, if prisoners have the funds to do so, does not violate prisoners' constitutional rights).

Additionally, Lewis asserts that the lack of recreation opportunities violated his constitutional rights. "Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened." *Antonelli*, 81 F.3d at 1432. Such a claim typically arises where an inmate is restricted to their cell for extended periods of time, e.g., placement in disciplinary segregation. Here, Lewis made use of the day room where he was able to get up and walk around outside his

cell. Although crowded, there was available space for pushups and sit-ups in adjoining walkways. Moreover, Lewis does not allege that his health was impacted by the lack of recreation. As such, this does not rise to the level of unconstitutional conditions of confinement.

Finally, Lewis complains that he observed paint chipping off the walls, that the food portions were too small, that the jail library was constitutionally inadequate and that the medical treatment at the jail violated his constitutional rights. Pretrial detainees are not constitutionally entitled to aesthetically pleasing conditions, and without an actual injury, the paint chipping issue fails to rise to the level of a constitutional claim. See *Babcock v. White*, 102 F.3d 267, 271 (7th Cir. 1996). Lewis also fails to allege that the food was nutritionally inadequate.

Moreover, the law library and medical treatment claims do not technically fall into the category of "conditions of confinement," but they would fail regardless. Lewis never states that the inadequate law library negatively affected any of his criminal proceedings or other litigation. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (inmate proceeding on denial of access to the Court claim must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim"). Lewis' medical claim does not rise to the level of a constitutional violation because he was adequately treated for his cut and the bug bite was not an objectively serious medical condition. See *Gutierrez v. Peters*, 111 F.3d 1364, 1370 (7th Cir. 1997).

Because the Plaintiff's conditions of confinement were not sufficiently serious to violate his constitutional rights, the Court need not address the defendants qualified immunity argument. Accordingly, Defendants' motions for summary judgment are **GRANTED**.

IT IS SO ORDERED.

Dated: April 18, 2016

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**DISTRICT JUDGE**
